IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION



DOYLE W. FOSTER, MARTHA G. FOSTER,
THOMAS K. NELSON, and CAROLYN C.
NELSON,
                Plaintiffs,

-vs-                                                          Case No. A-06-CA-818-SS

UNITED STATES OF AMERICA,
                Defendant.

## **ORDER**

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled case, and specifically the United States of America (the Government)'s Motion for Summary Judgment [#52] and Brief in Support [#51], Plaintiffs Doyle W. Foster, Martha G. Foster, Thomas K. Nelson, and Carolyn C. Nelson's Response [#60] in opposition, the Government's Reply [#61] in support, and Plaintiffs' Sur-Reply [#63-2][1] thereto as well as Plaintiffs' Motion for Summary Judgment [#54], the Government's Response [#58] in opposition, and Plaintiff's Reply [#62] thereto. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

This case is one of many tax cases relating to American Agri-Corp (AMCOR) partnerships of the 1980s. The AMCOR agricultural partnerships generally allowed partners to report significant losses on tax returns because "farming expenses typically exceeded any income realized from

---

[1] Plaintiffs also filed a Motion for Leave to File Sur-Reply [#63], which this Court grants.

farming activities." *Duffie v. United States*, 600 F.3d 362, 367 (5th Cir. 2010). The Internal Revenue Service (IRS) began investigating AMCOR partnerships in the late 1980s "to determine whether they were impermissible tax shelters." *Id.*

## I. Statutory Background

This case centers on the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), which amended the Internal Revenue Code.[2] Although several courts, including the Fifth Circuit, have previously summarized TEFRA's provisions, a brief review of TEFRA is necessary to provide context for this decision.

### A. TEFRA and Partnerships

In relevant part, TEFRA regulates the tax treatment of partnerships. As the United States Supreme Court has explained:

> A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners. 26 U.S.C. § 701. A partnership must report its tax items on an information return, § 6031(a), and the partners must report their distributive shares of the partnership's tax items on their own individual returns, §§ 702, 704.

*United States v. Woods*, 134 S.Ct. 557, 562 (2013). Congress enacted TEFRA, in part, to provide the IRS with a method for correcting errors on a partnership's returns in a single, unified proceeding. *Id.* at 562–63. "TEFRA requires partnerships to file informational returns reflecting the partnership's income, gains, deductions, and credits. Individual partners then report their proportionate share of

---

[2] TEFRA was formerly codified at 26 U.S.C. §§ 6221–6233. The Bipartisan Budget Act of 2015 repealed and replaced TEFRA and struck 26 U.S.C. § 7422(h), a jurisdictional provision addressed below. Pub. L. No. 114-74, 129 Stat. 625 (Nov. 2, 2015). Because this case concerns taxes assessed for taxable year 1984, the Court cites to the Internal Revenue Code (26 U.S.C.) as applied for 1984.

the items on their own tax returns." *Rodgers v. United States*, 843 F.3d 181, 184 (5th Cir. 2016) (quoting *Irvine v. United States*, 729 F.3d 455, 459 (5th Cir. 2013)).

As an overarching framework, "TEFRA established three categories for items considered in the tax treatment of a partnership: partnership items, nonpartnership items, and affected items." *Id.* (citing 26 U.S.C. § 6231(a)(3)–(5)) (internal quotation marks omitted). TEFRA defines a "partnership item" as "any item required to be taken into account for the partnership's taxable year under any provision of Subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of [subtitle F], such item is more appropriately determined at the partnership level than at the partner level." 26 U.S.C. § 6231(a)(3). TEFRA's corresponding regulations provided that items "more appropriately determined at the partnership level" include the gains, losses, deductions, and credits of a partnership. 26 C.F.R. § 301.6231(a)(3)–1. The term "partnership item" also "includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." 26 C.F.R. § 301.6231(a)(3)–1(b).

A "nonpartnership item" is "an item which is (or is treated as) not a partnership item." 26 U.S.C. § 6231(a)(4). "The tax treatment of nonpartnership items requires partner-specific determinations that must be made at the individual partner level." *Duffie*, 600 F.3d at 366. Finally, an "affected item" is "any item to the extent such item is affected by a partnership item." 26 U.S.C. § 6231(a)(5).

**B.     Two-Stage Proceedings**

TEFRA created a two-stage procedure for the IRS to revise partnership-related tax matters: first, the IRS assesses partnership items, making any adjustments it deems necessary, and then the

IRS may initiate proceedings against individual partners. *Rodgers*, 843 F.3d at 184. If the IRS decides to adjust partnership items during the first stage, it must notify the individual notice partners by issuing a Notice of Final Partnership Administrative Adjustment (FPAA). *Id.* A non-notice partner is a partner with less than a 1% interest in a partnership that has more than 100 partners. *See* 26 U.S.C. §§ 6231(a)(8), 6223(b)(1).

Partners can challenge a FPAA in partnership-level proceedings. *Rodgers*, 843 F.3d at 184. A partnership's tax matters partner (TMP) has the exclusive right to file a petition for readjustment of the partnership items in United States Tax Court or in a federal district court within ninety days of the FPAA's issuance. *Id.* at 184–85 (citing 26 U.S.C. § 6231(a)(7)). If the TMP does not challenge the FPAA within the ninety days, other partners who received notice may file a petition for readjustment within the following sixty days. *Id.* (citing 26 U.S.C. § 6226(b)(1)). Regardless of who files it, if a partnership-level challenge is filed, each partner is deemed a party to the case and is bound by its outcome absent an agreement to the contrary. *Id.* at 185 (citing 26 U.S.C. § 6226(c)(1)); *see also Crnkovich v. United States*, 202 F.3d 1325, 1328 (Fed. Cir. 2000).

In a partnership-level proceeding, the Tax Court has jurisdiction to determine all partnership items for the tax year to which the FPAA relates. *Duffie*, 600 F.3d at 367. The Tax Court also has jurisdiction to determinate the proper allocation of the partnership items among the partners. *Id.* (citing 26 U.S.C. § 6226(f)). For tax years before 1997, the Tax Court does not have jurisdiction over nonpartnership items or over affected items. *Id.*

Partners and the IRS may reach an agreed decision in the Tax Court on partnership items in multiple ways. *See* TAX CT. R. 248. First, the TMP may enter into a settlement agreement with the IRS and certify that no party objects to the entry of decision; such a settlement, filed with the Court,

binds all the parties.[3] TAX CT. R. 248(a). Alternatively, the IRS may move for entry of a decision if (1) all the participating partners agree or do not object and (2) the TMP agreed to the proposed decision without certifying an objection. TAX CT. R. 248(b)(1). Any party that subsequently objects to the entry of decision must file such objection with the Tax Court within sixty days of the IRS's motion.[4] Finally, a partner may "individually settle[] his or her partnership tax liability with the IRS, [and] that partner will no longer be able to participate in the partnership level litigation, and will be bound instead by the terms of the settlement agreement." *Rodgers*, 843 F.3d at 184.

Once adjustments to the partnership items become final, the IRS may begin partner-level proceedings to adjust the affected tax liability of the individual partners. *Woods*, 134 S.Ct. at 563. Procedural next steps depend on whether affected items qualify as computational adjustments or as substantive affected items. A computational adjustment merely requires a mechanical change in the tax liability of a partner to properly reflect adjustment of a partnership item. *Duffie*, 600 F.3d at 366. Such an adjustment can only be made at the conclusion of the partnership level proceeding and can be applied without any factual determination at the partner level. *Id.* By contrast, a substantive affected item "is dependent upon factual determinations (other than a computation) relating to an adjustment made at the partner level" and requires "fact-finding particular to the individual partner." *Id* at 366, 385. (quotation omitted).

Where the affected item is substantive, the IRS is required to follow the deficiency procedures articulated in subchapter B of the Internal Revenue Code, which include mailing the

---

[3] To bind 'non-notice' partners to a settlement agreement resolving partnership items, the TMP must expressly state in the agreement that it "shall bind the other partners." *Id.* (quoting *Duffie*, 600 F.3d at 367).

[4] The precise form of the objection is a "motion for leave to file a notice of election to intervene or participate, accompanied by a separate notice of election to intervene or a separate notice of election to participate." *See* TAX CT. R. 248(b)(4).

partner a statutory notice of deficiency. 26 U.S.C. § 6230(a)(2)(A)(i). But where the affected items are only a computational adjustments, deficiency procedures do not apply and the IRS is not required to issue a statutory notice of deficiency to the individual partner. *Duffie*, 600 F.3d at 385 (citing *Woody v. C.I.R.*, 95 T.C. 193, 202 (1990)). Instead, the IRS is merely required to mail the partner a notice of computational adjustment. *Id.*

C.   **Statute of Limitations**

Generally, the IRS has three years from the filing date of a tax return to assess taxes. *See* 26 U.S.C. § 6501(a). When an additional tax assessment is attributable to a partnership item or an affected item, the three-year statute of limitations runs from the later of the date the partnership filed its informational return or the date such return was due. 26 U.S.C. § 6229(a). The Fifth Circuit has determined § 6229(a) is not "an independent statute of limitations for issuing FPAAs." *Curr-Spec Partners, L.P. v. C.I.R.*, 579 F.3d 391, 393 (5th Cir. 2009). Rather, § 6229(a) allows the IRS to issue an FPAA at any time, but such FPAA "may affect only those partners whose individual returns remain open under I.R.C. § 6501(a) or some extension thereto, such as the minimum period of I.R.C. § 6229(a) . . . ." *Id.* at 399.

The three-year statute of limitations can also be extended by agreement or tolled if a FPAA is mailed to the TMP. 26 U.S.C. § 6229(a), (d). If the TMP or another partner challenges the FPAA, then the statute of limitations is further tolled until one year following the conclusion of the partnership-level proceedings. *Id.* But where no informational return is filed for a partnership, the IRS may assess any tax attributable to a partnership item or an affected item at any time. *Rodgers*, 843 F.3d at 186 (quoting 26 U.S.C. § 6229(c)).

Finally, where a partner claims the IRS "erroneously computed any computational adjustment[,]" the partner must file a claim for a refund within six months of the date the IRS mailed the notice of the adjustment to the partner. 26 U.S.C. § 6230(c)(2)(A).

## II.  Facts

In 1984, Mr. Nelson invested as a limited partner in Travertine Flame Associates (TFA). The same year Mr. Foster invested as a limited partner in Agri-Venture II (AVII). Both TFA and AVII were AMCOR agricultural partnerships.

On March 25, 1985, AVII filed its informational partnership return for 1984, which was signed by Joseph O. Voyer as treasurer. Gov't's Br. [#51-6] Ex. 2 (AVII Return). One day later, on March 26, 1985, TFA filed its informational partnership return for the year 1984, which was also signed by Joseph O. Voyer as treasurer. *Id.* [#51-5] Ex. 1 (TFA Return). Later in 1985, the Nelsons and Fosters both filed their 1984 tax returns, reporting a loss from their investments in the AMCOR agricultural partnerships and therefore reducing their tax liability. *Id.* [#51-7] Ex. 3 (Nelsons' Tax Return); *id.* [#51-8] Ex. 4 (Fosters' Tax Return).

On April 10, 1991, the IRS issued a FPAA to TFA and to AVII for tax years 1984 and 1985. In response to the FPAAs, individual partners from TFA and AVII other than Plaintiffs filed partnership-level lawsuits contesting the FPAAs in United States Tax Court. The FPAAs proposed disallowing the partnerships' reported farming expenses. Mr. Foster and Mr. Nelson did not receive notice and could not challenge the FPAA because they were non-notice partners. *See* Pls.' Mot. Summ. J. [#54] at 11 n.9. The TFA lawsuit was assigned docket number 15059-91, and the AVII lawsuit was assigned docket number 15048-91. In both lawsuits, the partners claimed the statute of limitations barred reassessment of income tax against the partners for partnership items from 1984.

*See* Gov't's Br. [#51-10] Ex. 6 (TFA Petition) ¶ 10A; *id.* [#51-11] Ex. 7 (AVII Petition). In response, the IRS argued exceptions under 26 U.S.C. § 6229 extended the partnerships' assessment deadlines. *id.* [#51-12] Ex. 8 (IRS Answer in TFA case) ¶¶ 13–16; *id.* [#51-13] Ex. 9 (IRS Answer in AVII case) ¶¶ 13–16.

In July 1999, TMP Frederick H. Behrens intervened in both the AVII and TFA suits. Pls.' Mot. Summ. J. [#54-5] Ex. D (AVII Tax Court Docket Sheet) at 11; *id.* [#54-6] Ex. E (TFA Tax Court Docket Sheet) at 9.

On December 6, 1999, the parties in both the TFA and AVII Tax Court suits agreed "the outcome of the statute of limitations issues present[ed] . . . [would] be determined in a manner consistent with the Court's findings of fact and law present in the Test Case Group case of <u>Agri-Venture Associates</u>, Docket No. 15047-91." Gov't's Br. [#51-17] Ex. 13 (TFA Stipulation) ¶ 7; *id.* [#51-18] Ex. 14 (AVII Stipulation) ¶ 7. The test case, *Agri-Venture Associates*, was consolidated with others and decided as *Agri-Cal Venture Associates v. Commissioner*, 80 T.C.M. (CCH) 295, 2000 WL 1211147 (2000).

Relevant here, in August 2000, the Tax Court in *Agri-Cal Venture Associates* found Agri-Venture Associates failed to file a valid partnership return for tax year 1984 because Agri-Venture Associate's 1984 return was not signed by a partner and therefore not a valid return. *Id. at* *4–11. As "[f]ailure to satisfy the requirements for filing a return is fatal to the validity and timeliness of the return[,]" the Tax Court concluded Agri-Venture Associates could not show it was entitled to the affirmative defense of statute of limitations. *Id.* at *7, *11. Thus, the Court held Agri-Venture Associates's "FPAA was issued before the expiration of the section 6229(a) assessment period . . . ." *Id.* at *11.

Following the *Agri-Cal Venture Associates* decision, Mr. Behrens, as TMP, agreed with the IRS to settle the AMCOR-related partnership cases through "separate agreed decisions to be filed in each suit on the same general terms, varying only as to the dollar amounts applicable to each partnership." Pls.' Mot. Summ. J. [#54-48] Ex. TT (Behrens Aff.) at ¶ 13. In April, the IRS moved for entry of decision in each suit, representing that the TMP agreed to the proposed decisions but did not certify that no party objected to the entry of decision. *Id.* [#54-45] Ex. QQ (Mot. Entry) ¶ 18. No partner objected to entry of decisions in the AVII or TFA suits. *See id.* at 8.

Subsequently, on July 19, 2001, the Tax Court entered decisions in both the TFA lawsuit and the AVII lawsuit. Gov't's Br. [#51] Exs. 16, 17 (Tax Court Decisions). Both decisions expressly stated "the assessment of any deficiencies in income tax that are attributable to the adjustments to partnership items for the years 1984 and 1985 are not barred by the provisions of I.R.C. § 6229." *Id.* The decisions also decreased the amount of farming expenses the partnerships could claim. *Id.*

As a result of those adjustments, the IRS assessed additional tax and interest against the Nelsons and the Fosters for tax year 1984. On April 9, 2002, the IRS received advance payment of the Nelsons' tax liability. *Id.* [#51-23] Ex. 19 (Nelsons' Refund Claim) at 9–10. On August 29, 2002, the IRS received advance payment of the Fosters' tax liability. *Id.* [#51-8] Ex. 4 (Fosters' IRS Transcript) at 1–2.

On August 6, 2002, the IRS mailed the Fosters a Form 4549-A, indicating the Fosters' income tax return had been adjusted and they owed additional amounts. Gov't's Reply [#61-9] Ex. 24 (Fosters' Adjustment Letter).[5] Likewise, on August 7, 2002, the IRS mailed the Nelsons a letter

---

[5] The Fosters were sent an earlier letter in error in July 2002. *See* Fosters' Adjustment Letter.

and "Form 4549-A explaining how the adjustments made during our examination of the [1984] return affect your individual income tax return." *Id.* [#51-22] Ex. 18 (Nelsons' Adjustment Letter). On September 9, 2002, the IRS finalized its assessment of $5,133 in additional tax and $27,485 in interest against the Nelsons and $11,052 in additional tax and $61,262.81 in interest against the Fosters. Nelsons' Refund Claim at 9–10; Fosters' IRS Transcript at 1–2. Both assessments were paid in full. *Id.*

On August 26, 2004, the Nelsons and the Fosters filed refund claims for 1984.[6] Nelsons' Refund Claim; Gov.'t's Br. [#51-9] Ex. 5 (Fosters' Refund Claim). Both couples requested refunds of the interest and tax they paid for 1984.[7] The IRS denied both refund claims, and Plaintiffs filed this suit on October 10, 2006.

In 2007, this case was stayed pending the results of related litigation. *See* Order of Aug. 14, 2007 [#15]. On July 25, 2017, the Court effectively lifted the stay with entry of a revised scheduling order. *See* Order of July 25, 2017 [#37]. The parties now file cross-motions for summary judgment, which are ripe for a decision.

## Analysis

### I. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp.*

---

[6] Although Mr. Nelson and Mr. Foster were partners in TFA and AVII, respectively, Mr. and Mrs. Nelson as well as Mr. and Mrs. Foster jointly filed their tax returns for 1984.

[7] The Fosters originally sought a refund for additional tax paid for tax year 1986 but represent they are no longer pursuing that claim. *See* Pls.' Mot. Summ. J. [#54] at 9. Plaintiffs also represent they are no longer pursuing the claim the IRS impermissibly assessed interest for tax year 1984. *Id.*

*v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party makes an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact

issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II. Application

Plaintiffs' sole remaining claim is the IRS impermissibly assessed additional taxes against them for 1984 after the statute of limitations under 26 U.S.C. § 6501(a) had expired. *See* Pls.' Mot. Summ. J. [#54] at 9. In moving for summary judgment, the Government argues this Court has no jurisdiction over this claim because (1) §7422(h) deprives the Court of jurisdiction over refund claims attributable to partnership items and (2) Plaintiffs failed to timely file their refund claims. Plaintiffs disagree, arguing the Court has jurisdiction and Plaintiffs are entitled to judgment as a matter of law. The Court must first examine the Government's jurisdictional arguments. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception"); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (reiterating that a court must find jurisdiction before determining validity of claim).

### A. No Jurisdiction over Claims Attributable to Partnership Items

The Fifth Circuit's prior cases compel finding no jurisdiction here. District courts generally have subject matter jurisdiction over an individual partner's refund claim. *See* 28 U.S.C. § 1346(a)(1); 26 U.S.C. § 7422(a). However, 26 U.S.C. § 7422(h) deprives a district court of jurisdiction over claims "brought for a refund attributable to partnership items" except when those items become nonpartnership items under § 6228(b) or when the claim is for erroneous computation

under § 6230(c). *See* 26 U.S.C. § 7422(h). Like in *Irvine*, the dispositive question is whether Plaintiffs' claim the additional tax assessments were time-barred is a claim for a refund attributable to a partnership item. 729 F.3d at 461. Thus, the Court turns to the grounds for Plaintiffs' refund claims.

In filing their refund claims, Plaintiffs assert the IRS had no authority to assess additional tax against them for 1984 because the § 6501(a) statute of limitations specifically applicable to them had run. Like the plaintiffs in *Rodgers*, the Plaintiffs here argue § 7422(h) does not bar jurisdiction because the statute of limitations depends on when each partner filed his initial tax return. Pls.' Resp. [#60] at 17–20. According to Plaintiffs, the statute of limitations is an affected item with a partnership-item element—whether there was a partnership-level extension of the statute of limitations—and a nonpartnership-item element—whether the IRS improperly assessed additional tax against the Plaintiffs over three years after Plaintiffs filed their personal tax returns. *Id.* at 18 & nn.34–35.

Plaintiffs' analysis of how the statute of limitations applies to partner-level assessments is flawed. It assumes a linear analysis always applies: a court first evaluates whether the assessment period for partnership items is open and then, only after conducting that evaluation, turns to whether the assessment period for partner items is open. But whether assessment of additional tax against a partner is time-barred involves "significant interplay between § 6501(a) and § 6229(a), a separate provision that can extend the § 6501(a) period for partnership items." *See Irvine*, 729 F.3d at 461. Here, just as in *Rodgers*, the IRS asserted § 6229 exceptions—the partnership returns were invalid for not being signed by a partner and the TMP agreed to the extensions—extended the statute of limitations. IRS Answer in TFA case ¶¶ 13–16; IRS Answer in AVII case ¶¶ 13–16; *see also*

*Rodgers*, 843 F.3d at 192. And, as the Court held in *Rodgers*, where "the government assert[ed] § 6229 as a basis to extend the § 6501(a) statute of limitations, the claim for refund is 'attributable to' a partnership item and § 7422(h) bars consideration of the limitation claim." 843 F.3d at 192 (quoting *Irvine*, 729 F.3d at 461–62) (alteration in original). "[W]here a basis for a § 6229 extension is asserted, any limitations determination with regard to § 6501(a) must also involve the resolution of § 6229, a partnership item." *Irvine*, 729 F.3d at 460.[8] Because Plaintiffs' limitations claim cannot be evaluated without evaluating the IRS's bases for extensions under § 6229, it is a claim attributable to a partnership item and § 7422(h) deprives this Court of jurisdiction.

Plaintiffs object, arguing there was no official partnership-level determination of the statute of limitations issue in either the AVII or the TFA lawsuit and Plaintiffs should not be bound to the lawsuits' agreed decisions. *See* Pls.' Mot. Summ. J. [#54] at 9–12.[9] But as the Fifth Circuit has repeatedly declared, "a refund court litigating or re-litigating a partnership item, such as the merits of the asserted § 6229 basis for an extension of the limitations period, is exactly the result prohibited by TEFRA." *Rodgers*, 843 F.3d at 192 (quoting *Irvine*, 729 F.3d at 461–62. Plaintiffs' arguments

---

[8] In an effort to distinguish this case from Fifth Circuit cases finding § 7422 barred jurisdiction, Plaintiffs argue the Court should differentiate between cases where the partners independently settled their liability with the IRS and cases where partners did not independently settle. *See* Pls.' Resp. [#60] at 1–2. The Court finds no rationale for differentiating among the Fifth Circuit's cases examining generally applicable TEFRA provisions based on whether the partners were settled or unsettled. *See Kercher*, 539 F. App'x at 521 (featuring unsettled partners and incorporating the Fifth Circuit's analysis from *Irvine*, which was brought by settled partners).

[9] Plaintiffs repeatedly argue a show cause order should have been issued in the AVII and TFA lawsuits to bind them to the results in the partnership proceedings. *See* Pls.' Mot. Summ. J. [#54] at 11, 14–15, 28. The authority for this argument appears to be Tax Court Rule 91(f), which concerns a party's refusal or failure to confer regarding required stipulations for trial. *See* Pls.' Resp. [#60] at 6 n.15 (citing TAX CT. RULE 91(f)). However, the controlling rule for settlement agreements is Tax Court Rule 248, and Plaintiffs do not argue Rule 248 was violated. *See* TAX CT. RULE 248. Notably, Plaintiffs were parties to the partnership proceedings and did not object to entry of a decision. *See* 26 U.S.C. § 6226(c)(1); TAX CT. RULE 248.

are immaterial to whether this Court has jurisdiction here. Because it lacks jurisdiction over Plaintiffs' refund claims, the Court grants the Government's motion for summary judgment.

## B. Failure to Timely File Refund Claims

Alternatively, even if § 7422 does not deprive this Court of jurisdiction, this Court lacks jurisdiction because Plaintiffs failed to timely file their refund claims. To overcome sovereign immunity in a tax refund action, a taxpayer must first file a refund claim with the IRS within the time limits established by the Internal Revenue Code. *Duffie*, 600 F.3d at 384 (citing *United States v. Dalm*, 494 U.S. 596, 602 (1990)). A taxpayer's failure to file a timely refund claim with the IRS deprives the district court of subject matter jurisdiction. *Id.* (citing *Gustin v. United States*, 876 F.2d 486, 488 (5th Cir. 1989)).

Generally, a refund claim must be filed with the IRS "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later . . . ." 26 U.S.C. § 6511(a). However, a taxpayer must file a refund claim for an erroneous computational adjustment within six months of the date the IRS mailed notice of computational adjustment to the partner. 26 U.S.C. § 6230(c)(2)(A). And the taxpayer has the burden of showing compliance with the applicable limitations period. *Duffie*, 600 F.3d at 386 (citing *Markarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

The Government claims the IRS's adjustment of Plaintiff's tax liability was a computational adjustment because the Fosters and Nelsons were assessed additional tax and interest only to properly reflect changes to the partnership's expenses. Thus, according to the Government, Plaintiffs had six months from the date the IRS mailed notice of the computational adjustments to request a refund. Gov't's Br. [#51] at 16. In support, the Government cites *Duffie*, which found the IRS's

assessment of interest under 26 U.S.C. § 6621(c) was a computational item and the six-month deadline applied. *Id.* (citing *Duffie*, 600 F.3d. at 386). The Government also points to *Kercher v. United States*, No. 4:07-cv-310, 2012 WL 874325 (E.D. Tex. 2012), *aff'd* 539 F. App'x 517 (5th Cir. 2013), where the district court concluded the six-month deadline barred a refund claim for additionally assessed tax. *Id.*

In response, Plaintiffs argue their refund claims are not subject to the six-month filing deadline. Most significantly, Plaintiffs argue the six-month filing deadline only applies where a partner requests a refund because tax liability was "erroneously computed." Pls.' Resp. [#60] at 11. According to Plaintiffs, their computational adjustments were mathematically correct but were untimely under 26 U.S.C. § 6501(a). *Id.* Plaintiffs assert their refund requests were "due to violation of their substantive statutory rights to assessment deadlines" and thus the filing deadline of 26 U.S.C. § 6501(a) applies. *See id.* Plaintiffs argue the Government impermissibly conflates the test used to determine when the IRS is required to send a deficiency notice, articulated in 26 U.S.C. § 6230(a), with the test used for determining when the six-month filing deadline applies, articulated in 26 U.S.C. § 6230 (c)(1)(A).[10] *Id.* at 13–14.

Where, as here, the refund claim asserts a computational adjustment should not have been imposed at all, the refund claim is still a claim the IRS erroneously computed additional tax liability under § 6230(c)(1)(A). *See Kercher*, 2012 WL 874325, at *7–*8 (applying the six-month deadline where the taxpayer did not dispute the calculated amount of additional taxes but contested whether

---

[10] 26 U.S.C. § 6230(c)(1)(C), which authorizes a partner to file a claim for a refund where IRS "erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item[,]" was not in effect in 1984 and applies only to tax years ending after August 5, 1997. *See* Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1238, 111 Stat. 788. Thus, the Court only considers whether Plaintiffs' refund claims fall under § 6230(c)(1)(A) for purposes of the six-month filing deadline.

the IRS should have imposed the additional tax without evidence of the taxpayer's amended return). Plaintiffs do not contest that the additional tax liability assessed against them is appropriately classified as computational items. *See* Pls.' Resp. [#60] at 10–11. Because the adjustment to Plaintffs' tax was computational—"without any factual determination at the partner level"—rather than substantive, the six-month deadline applies. *See Kercher*, 539 F. App'x at 523.

Plaintiffs also argue the Government's reliance on *Duffie* and *Kercher* is misplaced and neither case may be brought to bear here. Pls.' Resp. [#60] at 15–16. Plaintiff emphasizes how the *Duffie* court considered whether a refund claim for interest imposed under § 6621(c) was time-barred rather than a claim for additional tax liability. However, the Fifth Circuit's general analysis in *Duffie* of when the six-month filing deadline applies and the definition of a computational item is still applicable here. *See* 600 F.3d. at 384–86. Likewise, although Plaintiff argues the district court and Fifth Circuit *Kercher* opinions should not be relied upon because both are unpublished, this Court still considers the *Kercher* opinions as persuasive authority and a useful indication of how TEFRA applies.

Finally, Plaintiffs claim the IRS's August 2002 correspondence to Plaintiffs was insufficient to inform them the IRS had assessed erroneous computational adjustments against them. Pls.' Resp. [#60] at 12–13. However, the Court finds Plaintiffs had adequate notice of the computational adjustment. *See* Nelsons' Adjustment Letter; Fosters' Adjustment Letter. Both the Nelsons and the Fosters submitted advance payment of the additional taxes even before receiving letters notifying them of the adjustment in August 2002. *See* Nelsons' Refund Claim at 9–10; Fosters' IRS Transcript at 1–2. Plaintiffs were well aware of the computational adjustment when they received the IRS's August 2002 correspondence and thus the six-month period began to run in August 2002, when the

-17-

IRS mailed the notices of computational adjustment. But Plaintiffs did not file their refund claims until August 2004, at least two years after receiving notice of the computational adjustments. Because Plaintiffs cannot meet their burden of showing compliance with the applicable limitations period, this Court finds it lacks jurisdiction over Plaintiffs' refund claims.

## Conclusion

Plaintiffs' refund claims are attributable to a partnership item, and thus § 7422(h) bars this Court from exercising jurisdiction over this case. Alternatively, Plaintiffs' failure to file timely refund claims with the IRS deprives this Court of subject matter jurisdiction. Therefore, the Court grants the Government's motion for summary judgment, denies Plaintiffs' motion for summary judgment, and dismisses this case for lack of subject matter jurisdiction

Accordingly,

IT IS THEREFORE ORDERED that Plaintiffs Doyle W. Foster, Martha G. Foster, Thomas K. Nelson, and Carolyn C. Nelson's Motion for Leave to File Sur-Reply [#63] is GRANTED;

IT IS FURTHER ORDERED that the United States of America's Motion for Summary Judgment [#52] is GRANTED; and

IT IS FINALLY ORDERED that Plaintiffs Doyle W. Foster, Martha G. Foster, Thomas K. Nelson, and Carolyn C. Nelson's Motion for Summary Judgment [#54] is DENIED.

SIGNED this the 19th day of June 2018.

_____
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE